OPINION
{¶ 1} In this accelerated calendar case, appellant, Jonita E. Loss ("Jonita"), appeals the judgment entered by the Portage County Court of Common Pleas, Domestic Relations Division. The trial court modified a child support order between Jonita and appellee, Michael R. Claxton ("Claxton").
 {¶ 2} Claxton and Jonita were married in Illinois. Two children were born from this marriage, Tyler — in August 1984, and Erica — in September 1985. In 1993, while living in Tennessee, Claxton and Jonita divorced. A divorce decree was filed in Tennessee. This decree required Claxton to pay $511 per month in child support. The decree indicated the support obligation would terminate in September 2003. Prior to the instant proceedings, Claxton was paying more than the required $511 per month in support.
 {¶ 3} At the time of the current proceedings, Jonita lived in Illinois and Claxton lived in Portage County, Ohio. In March 2001, Jonita filed a motion to modify the Tennessee decree in Illinois. The Illinois Court dismissed the action for lack of jurisdiction. In July 2001, Jonita filed a motion to modify the Tennessee decree in Tennessee. Similarly, the Tennessee Court dismissed the matter for lack of jurisdiction. Thereafter, on December 31, 2001, Jonita and the Portage County Child Support Enforcement Agency ("PCCSEA") initiated the instant action in the Portage County Common Pleas Court. Part of this filing was a petition to register the Tennessee decree. The action sought enforcement and modification of the Tennessee decree under the Uniform Interstate Family Support Act ("UIFSA"), which is codified in Ohio as R.C. 3115.01, et seq.
 {¶ 4} The PCCSEA was represented by the Portage County Prosecutor's Office. However, Jonita retained separate counsel to represent her interests.
 {¶ 5} An in-chambers hearing was held before the magistrate on January 29, 2002. On April 4, 2002, two judgment entries were filed. The entries were intended to be agreed judgment entries; however, Claxton refused to approve them. One of the entries concerned the amount of child support payments. The other document was captioned as an order, and concerned health insurance coverage and payment of medical expenses. Claxton filed a motion to vacate that only referenced "the judgment entry." He provided several reasons for this, including: the written version was not what was agreed upon and that there were discrepancies regarding Jonita's income. His attorney later indicated that the request was due, in part, to Jonita claiming both children on her tax return, contrary to the Tennessee decree. The magistrate issued an order vacating the judgment entry. Both Claxton's request and the magistrate's order only reference one judgment entry. However, the health insurance and medical expense order and the judgment entry regarding child support were separately signed by both the trial court and the magistrate, as well as the attorneys for Jonita and PCCSEA. In addition, they are individually docketed in the record.
 {¶ 6} The matter was initially set for an evidentiary hearing in June 2002. However, Claxton filed two motions for continuance, due to difficulties obtaining discovery materials from Jonita's financial institutions in Illinois. These motions were granted, and a hearing was held in August 2002. Jonita and her accountant, Nick Fiorillo, testified via telephone. Claxton and his accountant, Paul Huchok, and the parties' attorneys were present in court.
 {¶ 7} Claxton testified that his income for 2001 was $110,322. The bulk of the hearing concerned evidence regarding Jonita's 2001 income. Jonita earned $21,640 working as a nurse. In addition, she has a real estate license. She completed several real estate transactions. Mr. Fiorillo calculated Jonita's income for child support purposes at $13,300, which did not include about $9,000 that, in his opinion, was nonrecurring or unsustainable. He testified the figure was $22,338 if these amounts were included. Mr. Huchok testified Jonita's 2001 income for child support purposes was $41,725.
 {¶ 8} In October 2002, the magistrate issued his decision in this matter. This decision found: (1) Jonita's income is $37,969; (2) Claxton's income is $110,000; (3) there was only one child remaining for child support purposes; (4) child support should be set at $920 per month; (5) the effective date of the modification was January 1, 2002; (6) the court has no authority to enforce the collection of medical expenses; (7) neither party is entitled to attorney fees; and (8) Claxton was entitled to one-half the direct cost of transportation for the child. Jonita and the PCCSEA objected to the magistrate's decision. The parties briefed the issues, and the trial court heard oral arguments during a hearing in March 2003. On April 16, 2003, the trial court issued a judgment entry, in which it overruled the objections to the magistrate's decision, and modified and adopted the magistrate's decision.
 {¶ 9} Jonita appealed the trial court's April 16, 2003 judgment entry to this court. This appeal was assigned case No. 2003-P-0050. However, PCCSEA timely filed a request for findings of fact and conclusions of law with the trial court. Jonita filed a motion to join with PCCSEA's request for findings of fact and conclusions of law. Due to the timely filing of the request for findings of fact and conclusions of law, the appeal was dismissed by this court for lack of a final appealable order.[1]
 {¶ 10} On November 5, 2003, the trial court issued its findings of fact and conclusions of law. Therein, the court ruled: (1) Jonita's income is $37,696 and Claxton's income is $110,000; (2) child support is set at $1,406 per month from January 1, 2002 through June 2002, thereafter, it is $920 per month until September 2003; (3) the court does not have authority to modify or enforce the terms of the Tennessee decree regarding medical expenses; (4) attorney fees are not warranted for either party; (5) Claxton is entitled to a credit for one-half of the child's travel expenses; (6) the prior child support modification judgment entry was vacated by the court; and (7) the court did not have authority to modify the Tennessee decree prior to the date it was registered in Ohio.
 {¶ 11} Jonita raises eight assignments of error. Her first two assignments of error are:
 {¶ 12} "[1.] The trial court failed to include both children in its calculation modifying support.
 {¶ 13} "[2.] The trial court, in the alternative, erred in not including Tyler in its calculation increasing support retroactive to 1-1-02."
 {¶ 14} Due to the similar nature of these assigned errors, they will be addressed in a consolidated fashion.
 {¶ 15} Determinations regarding child support obligations under the UIFSA fall within the discretion of the trial court and will not be disturbed without a demonstration of an abuse of that discretion.[2] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[3]
 {¶ 16} The Tennessee decree provided that Claxton was to pay $511 per month in child support. The decree did not designate a certain amount per child. Likewise, the order only indicated it would terminate on a certain date, without distinguishing between the children.
 {¶ 17} Tyler turned eighteen years old on the day of the hearing, August 12, 2002. He had graduated high school in June 2002. The trial court awarded child support in the amount of $1,406 per month from January 2002 through June 2002. Evidence presented at the hearing indicated that, in August 2002, Tyler was living in Los Angeles, where he was planning to attend college.
 {¶ 18} Jonita claims the trial court and the magistrate erred by only including one child in the child support determinations. Both entries refer to "child" in the singular. The magistrate's decision calculates child support at $920 per month for the duration of the modification. However, the trial court's findings of fact and conclusions of law correct this amount, ordering support at $1,406 through June 2002, and $920 per month for the remainder of the support order. Presumably, the court considered both children during the time period from January to June 2002.
 {¶ 19} Under UIFSA, the trial court is to apply the law of the issuing state regarding emancipation.[4] Tennessee law provides:
 {¶ 20} "Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first."[5]
 {¶ 21} Tennessee law is substantially similar to Ohio law in that a child is emancipated after a child turns eighteen and graduates from high school. Accordingly, the trial court did not err by failing to include Tyler in the support calculations through September 2003.
 {¶ 22} Further, the trial court's order is consistent with the original Tennessee decree. The Tennessee decree stated it would terminate in September 2003. Likewise, the trial court's modification indicated it would terminate in September 2003. The trial court merely modified the amount of support to be paid. The Tennessee decree did not reduce the amount of child support upon Tyler's emancipation. The trial court's order continued to provide support, greater than the $511 per month amount, through September 2003. The trial court was modifying the child support award by increasing it. In fact, the child support award was significantly increased for every month it was within the trial court's jurisdiction. The increase was greater, however, when both Tyler and Erica were minors and living with their mother.
 {¶ 23} Jonita argues that a purpose of extending child support orders past the age of emancipation is to provide for the child's college education. However, the original child support order in this case was set to terminate in September 2003. At most, Tyler may have completed one year of college at this point, and Erica may have just started her college education. As such, this evidence suggests the parties did not intend for the support order to cover the cost of the children's college education. Finally, the original Tennessee decree contradicts Jonita's argument. The decree was to terminate only two days after Erica's eighteenth birthday. This suggests the parties originally intended to provide support for the children until they were emancipated.
 {¶ 24} Alternatively, Jonita argues that the child support order should have included Tyler through his eighteenth birthday (in mid-August 2002), rather that June 2002. While his eighteenth birthday may have been a more practical date to use for determining when to stop including Tyler in the support calculations, we cannot say the trial court abused its discretion by using June 2002. First, the dates are less than two months apart. Next, there was evidence presented at the hearing that suggested Tyler had been living in Los Angeles for a portion of the summer.
 {¶ 25} Jonita's first and second assignments of error are without merit.
 {¶ 26} Jonita's third assignment of error is:
 {¶ 27} "The trial court erred in not ordering the child support modification retroactive to March 5, 2001."
 {¶ 28} Jonita asserts that the trial court should have ordered the modification retroactive to March 2001, when she filed a modification request in the Illinois Court, rather than January 2002, after the action was filed in Portage County Court. We disagree.
 {¶ 29} Pursuant to R.C. 3115.40, the Portage County Court of Common Pleas did not have jurisdiction over the decree until it was filed and registered in Portage County. Without jurisdiction, the trial court was not permitted to issue a modification award prior to December 31, 2001. In addition, a review of R.C. 3119.71, regarding retroactive modification of support orders, supports this conclusion. This section provides that the modification should be retroactive to the month "review of the child support order begun." Obviously, review of the order by the trial court did not begin in March 2001.
 {¶ 30} The trial court did not err by failing to award a retroactive child support modification to March 2001.
 {¶ 31} Jonita's third assignment of error is without merit.
 {¶ 32} Jonita's fourth assignment of error is:
 {¶ 33} "The trial court erred in allowing appellee to raise the issue of transportation expense for the first time at the [August 2002] hearing before the magistrate."
 {¶ 34} Claxton was permitted to raise this issue at the August hearing. Pursuant to R.C. 3119.24, extraordinary costs associated with parenting time may be taken into account. Thus, transportation expenses may be credited against child support obligations in certain circumstances.
 {¶ 35} The trial court permitted Claxton to submit evidence of travel expenses in his post-hearing brief. These alleged expenses were $3,237 for 2000; $4,496 for 2001; and $2,364 for 2002, through August. We agree with Jonita that the trial court would have abused its discretion by crediting these amounts without permitting her to cross-examine Claxton on the issue. However, we do not know exactly what amounts were awarded as a credit.
 {¶ 36} The trial court's judgment entry is ambiguous. The entry provides, "[Claxton] is entitled to a credit against the support obligation for one-half the transportation of the child under the visitation schedule." The entry does not indicate to what extent the credit is retroactive. Nor does the entry place a limit on the types of expenses to be credited. In addition, the entry does not indicate which of the children it is intended for, or whether it is intended for both of them. While the entry does say "child" in the singular, this court cannot be certain that the verbiage is not merely carried over from the magistrate's decision, which ruled there was only one child for support purposes for the duration of the modification.
 {¶ 37} As a general matter, the trial court did not abuse its discretion by awarding a credit to Claxton for travel expenses. However, the ambiguous nature of the judgment entry prevents this court from further reviewing this issue to determine whether the amount and duration of the credit were reasonable.
 {¶ 38} On remand, the trial court needs to clarify the time-period for this order; indicate whether it applied to both Tyler and Erica and, if so, the duration it applied to both children compared to just one child; and specify what expenses are to be credited. Finally, if the court permits Claxton to submit evidentiary materials, Jonita should be given the opportunity to challenge the evidence through cross-examination.
 {¶ 39} Jonita's fourth assignment of error is with merit regarding the specific amount of travel expenses to be credited to Claxton.
 {¶ 40} Jonita's fifth assignment of error is:
 {¶ 41} "The trial court erred in its finding that appellant's annual income was $37,969 for child support purposes."
 {¶ 42} Jonita's income was difficult to compute. Being in the rental property business, in addition to her nursing income, there were a variety of factors to take into consideration, including: rental income, mortgages, proceeds from sales, depreciation, maintenance expenses, and general expenses such as mileage. Two expert witnesses testified regarding Jonita's income for 2001. These experts concluded that her income was $13,300 and $41,725, respectively. The trial court concluded her income was $37,696. The fact that the trial court's determination is between the two figures provided by the expert testimony weighs heavily against a finding that the trial court abused its discretion.
 {¶ 43} Jonita claims the trial court erred by finding that income from the sale of real estate was sustainable and recurring income. Jonita's income varied depending on the amount of income that was included from her rental property business. There was evidence presented that she had a real estate license, is affiliated with a real estate agency, deducted 16,000 miles as business expenses, and completed several real estate transactions. We cannot conclude the trial court abused its discretion by determining that the real estate endeavors produced sustainable and recurring income.
 {¶ 44} Jonita's fifth assignment of error is without merit.
 {¶ 45} Jonita's sixth assignment of error is:
 {¶ 46} "The trial court erred in ruling that Ohio cannot enforce the collection of medical expenses under UIFSA."
 {¶ 47} Initially, we note the trial court modified the terms of the payment of medical expenses in the April 4, 2002 order. Again, we are uncertain whether this order was vacated by the magistrate's order vacating the initial child support judgment entry. While the magistrate's vacation entry only refers to a single judgment entry, the subsequent magistrate's decision and the trial court's findings of fact and conclusions of law both conclude that the trial court has no authority to modify medical coverage terms of the original Tennessee decree.
 {¶ 48} The Tennessee decree provided that Claxton and Jonita would split all the children's medical costs not covered by insurance. This was part of the child support order.[6]
Therefore, the trial court could enforce terms of the support order relating to medical expenses.[7]
 {¶ 49} To hold otherwise would defeat the purpose of the UIFSA. The result would be contemporaneous actions in multiple jurisdictions to resolve the same basic issue — enforcing the same support order to provide support for the children.
 {¶ 50} In the case sub judice, the Tennessee decree was registered in Ohio, at which time the trial court retained jurisdiction over the matter.[8] In addition, when the decree was registered, the box was marked next to "for modification and enforcement." However, even if the registration only indicated the decree was being registered for modification purposes, the trial court still had the authority to enforce the decree.[9]
 {¶ 51} The trial court erred by concluding that it did not have authority to enforce the Tennessee decree relating to medical expenses.
 {¶ 52} As an aside, we note that Claxton filed a show cause motion seeking the court to order Jonita to pay her share of the medical expenses. Thus, we are remanding this matter to the trial court for the trial court to determine what medical expenses, if any, are owed by either party. In addition, it would be helpful for the trial court to clarify whether the medical insurance order was vacated, or whether it is still in effect.
 {¶ 53} Jonita's sixth assignment of error has merit.
 {¶ 54} Jonita's seventh assignment of error is:
 {¶ 55} "The trial court abused its discretion in not awarding appellant her expenses and attorneys fees."
 {¶ 56} "`The general rule is that the decision whether to award attorney fees is a matter within the sound discretion of the trial court. In the absence of a clear abuse of that discretion, a reviewing court will not reverse the judgment of the trial court.'"[10]
 {¶ 57} Under UIFSA, R.C. 3115.24(B) provides that a trial court may award costs and attorney fees to the obligee if the obligee prevails. The use of the word "may" indicates this action is discretionary.[11] After reviewing the record, we conclude that the trial court did not abuse its discretion by failing to award Jonita attorney fees and costs.
 {¶ 58} R.C. 3115.24(C) provides "[t]he tribunal shall order the payment of costs and reasonable attorney's fees if it determines that a hearing was requested primarily for delay." (Emphasis added.)
 {¶ 59} Jonita contends that Claxton was unreasonably delaying the proceedings prior to the action being filed in the Portage County. Whatever delay tactics, if any, that may have happened prior to the trial court retaining jurisdiction over this matter are irrelevant for the purposes of awarding attorney fees. Moreover, we note that Claxton's jurisdictional challenges were successful.
 {¶ 60} In the instant proceedings, Claxton did file two motions to continue the hearing. However, both motions alleged delays in obtaining discovery of materials from out of state. The second motion was supported by affidavits describing the discovery difficulties. In light of the complex issues regarding Jonita's income, we cannot say these motions to continue were unreasonable.
 {¶ 61} The trial court did not abuse its discretion by failing to award expenses and attorney fees to Jonita.
 {¶ 62} Jonita's seventh assignment of error is without merit.
 {¶ 63} Jonita's eighth assignment of error is:
 {¶ 64} "Magistrate Badger was without authority to vacate a judgment entry approved by the court."
 {¶ 65} Initially, we note that Jonita is correct in her assertion, that a magistrate does not independently have the authority to vacate a judgment entry signed by a trial court. However, the magistrate's order recommending the judgment entry be vacated was not objected to and was ultimately approved by the trial court. Accordingly, for the reasons that follow, this assignment of error is without merit.
 {¶ 66} Once again, we are uncertain whether the vacation entry applied to the judgment entry regarding child support modification alone, or also covered the order regarding medical insurance and expenses. For the purposes of this analysis, we will conduct a singular analysis encompassing both judgment entries, wherein "judgment entry" is referenced in the singular.
 {¶ 67} The judgment entry at issue resulted from topics that were allegedly agreed upon at the January 29, 2002, in-chambers hearing with the magistrate. The judgment entry was filed on April 4, 2002. However, prior to the judgment entry being filed, due to discoveries made after the hearing, Claxton no longer agreed to the judgment entry. Accordingly, neither Claxton nor his attorney signed the judgment entry, and the language "refused to approve" was hand-written in the space designated for his attorney's signature.
 {¶ 68} On April 19, 2002, Claxton filed a "motion to set for hearing." Therein, he requested the April 4, 2002 judgment be vacated. Although he did not cite to Civ. R. 60 in this pleading, it appears that Claxton was seeking relief pursuant to this rule.
 {¶ 69} Essentially, if Claxton was unhappy with the judgment of the trial court, he had two options: (1) to pursue a Civ. R. 60(B) motion with the trial court or (2) an appeal to this court. He chose the first. Claxton did not request the magistrate, rather than the trial court, to rule on his motion to vacate. However, Civ. R. 53(C)(1)(a) permitted the trial court to refer Claxton's motion to the magistrate.
 {¶ 70} The magistrate's order indicates a hearing was held on May 9, 2002. The record is devoid of a transcript of this hearing. Accordingly, this court does not know what evidence was presented at the hearing. Likewise, this court does not know what arguments were made by the attorneys or whether Claxton made an in-court motion for relief from judgment pursuant to Civ. R. 60(B). An appellate court is limited to the record before it.[12] In addition, this court has previously held that "[i]f appellant cannot demonstrate the claimed error then we presume the regularity of the trial court proceedings and affirm the judgment."[13] Jonita had the duty, pursuant to App. R. 9(B), to file a transcript with this court.
 {¶ 71} The magistrate issued an order vacating the April 4, 2002 judgment entry on May 14, 2002. Jonita did not file objections to this action pursuant to Civ. R. 53. Accordingly, the trial court did not immediately review the magistrate's decision. In addition, as a result of her failure to timely file objections, Jonita is precluded from raising this perceived error on appeal.[14]
 {¶ 72} The matter proceeded to the August 2002 hearing. Thereafter, the magistrate filed its decision on the merits of the case in October 2002. Jonita objected to the October magistrate's decision. Therein, she objected to the authority of the magistrate to vacate the April 4, 2002 judgment entry. The trial court ultimately overruled the objections to the October decision and, by implication, affirmed the decision to vacate the initial judgment entry. Finally, in the trial court's findings of fact and conclusions of law, it notes that the prior judgment entry had been vacated by the court. Accordingly, the vacation of the judgment entry was ultimately approved by the trial court.
 {¶ 73} After the magistrate ruled on the motion to vacate, both parties continued to participate in the process, including the evidentiary hearing in August 2002. Jonita did not timely object to the authority of the magistrate to rule on the motion to vacate. Finally, Jonita has not filed a transcript of the May 9, 2002 hearing.
 {¶ 74} Jonita's eighth assignment of error is without merit.
 {¶ 75} The judgment of the trial court regarding Jonita's first, second, third, fifth, seventh, and eighth assignments of error is affirmed. The judgment of the trial court regarding Jonita's fourth and sixth assignments of error is reversed.
 {¶ 76} This matter is remanded to the trial court for further proceedings consistent with this opinion. Specifically, the trial court shall: (1) clarify whether the April 4, 2002 order relating to the modification of medical terms of the original decree was vacated by the court or whether it is still in effect; (2) determine the amount of medical expenses owed by each party; and (3) clarify the terms of Claxton's credit for travel expenses.
Ford, P.J., concurs,
Christley, J., dissents with Dissenting Opinion.
[1] Loss v. Claxton, 11th Dist. No. 2003-P-0050,2003-Ohio-5427.
[2] Smith v. Smith, 9th Dist. No. 21204, 2003-Ohio-1478, at ¶ 10, quoting Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] See, e.g., Vancott-Young v. Cummings (May 24, 1999), 12th Dist. No. CA98-09-122, 1999 Ohio App. LEXIS 2342, at *13-14.
[5] Tenn. Code Ann. 34-1-102(b).
[6] See R.C. 3115.01(B).
[7] See, e.g., Vancott-Young v. Cummings,1999 Ohio App. LEXIS 2342, at *13-14.
[8] R.C. 3115.40.
[9] R.C. 3115.47.
[10] (Citations omitted.) Kalia v. Kalia,151 Ohio App.3d 145, 2002-Ohio-7160, at ¶ 50.
[11] See Dorrian v. Scioto Consrv. Dist. (1971),27 Ohio St.2d 102.
[12] See, e.g., State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus.
[13] State v. Davis (Dec. 4, 1998), 11th Dist. No. 97-P-0111,1998 Ohio App. LEXIS 5810, at *2, citing Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19; Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199; Bucary v.Rothrock (July 13, 1990), 11th Dist. No. 89-L-14-046,1990 Ohio App. LEXIS 2854, at *2-3.
[14] Civ. R. 53(E)(2)(d).